DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Overconfidence can lead to incarceration. Despite being told that he was free to go, Darius Jones agreed to let police search his car. He, apparently, forgot that he was sitting on a bag of crack cocaine. When police searched him, they found $1660 in his pockets, $3000 in his boots, and more cocaine in a knit pouch that was hidden inside his underwear. After the trial court denied his motion to suppress, Mr. Jones entered a no contest plea, and the trial court convicted him of possession of drugs. The court later ordered the $4660 that he had at the time of his arrest to be forfeited. This Court affirms because Mr. Jones consented to the search of his car, and there was evidence to suggest that he used the $4660 to facilitate his possession of cocaine. *Page 2 
 MOTION TO SUPPRESS {¶ 2} Mr. Jones's first assignment of error is that the trial court incorrectly denied his motion to suppress. He has denied giving the police consent to search his car and has argued that the officers who said he did were not credible. Whether consent to a search was voluntarily given is determined by the totality of the circumstances.State v. Childress, 4 Ohio St. 3d 217, paragraph one of the syllabus (1983).
 {¶ 3} At the suppression hearing, Patrolman Brandon Heim of the Wooster Police Department testified that a confidential informant told his department that a man would be transporting a large quantity of cocaine to Wooster. The informant said the man would identify himself as Dearco Jones and described the vehicle that he would use. The informant also said that, although the driver would provide Dearco Jones's name, address, and social security number, he would actually be Dearco Jones's brother. Patrolman Heim said that, after he stopped a vehicle matching the description he had been given, the driver, Mr. Jones, said that his name was Dearco Jones. While Mr. Jones did not have a license, he provided Dearco Jones's address and social security number.
 {¶ 4} Patrolman Heim had another officer bring him a picture of Dearco Jones, but he could not say for sure whether Mr. Jones was who he said he was. Accordingly, after Patrolman Heim gave Mr. Jones a written warning for improper window tint, he told him that "that was all I had unless he had anything I needed to be concerned about." In response, Mr. Jones patted his chest and waist, indicated that there was nothing there, and told the officer that he could look. When Patrolman Heim asked if he minded, Mr. Jones got out of the car.
 {¶ 5} Patrolman Scott Rotolo testified that he was at the police station when Patrolman Heim asked over the radio if someone could bring him a picture of Dearco Jones. After he took *Page 3 
the picture to Patrolman Heim, he remained at the scene. He said that, after Patrolman Heim gave Mr. Jones the window tint warning, Patrolman Heim told Mr. Jones that "I don't have anything more for you unless you have anything on you that I need to know about." In response, Mr. Jones said "no, and you can check." When Patrolman Heim replied "if you don't mind," Mr. Jones opened the door to his car and stepped out. Patrolman Rotolo immediately noticed a small bag containing a white rock-like substance on the driver's seat. He said that the substance in the bag appeared to be crack cocaine.
 {¶ 6} Mr. Jones admitted telling Patrolman Heim that his name was Dearco Jones and providing his brother's social security number. He said that he gave his brother's information because he does not have a driver's license. He remembered Patrolman Heim telling him that he was "free to go unless [he had] something on [him] that [Patrolman Heim] should know about." He testified, however, that he did not consent to the search. According to Mr. Jones, it was Patrolman Heim who opened the door of the car and told him to get out.
 {¶ 7} Mr. Jones has argued that it does not make sense that someone who has drugs in his car and has been told that he is free to go would volunteer to let his car be searched. At the hearing, the State argued in response that Mr. Jones is a headstrong individual, who volunteered himself because he was confident that he would not get caught.
 {¶ 8} As the trial court noted, whether Mr. Jones voluntarily consented depends on whether he or the officers were more credible. Patrolmen Heim's and Rotolo's statements about the incident were consistent with each other. Mr. Jones, on the other hand, admitted that he lied to Patrolman Heim twice about his identity. It, therefore, was proper for the trial court to determine that his testimony was less credible. Based on a review of the totality of the *Page 4 
circumstances, this Court concludes that Mr. Jones voluntarily consented to the search of his vehicle. His first assignment of error is overruled.
 FORFEITURE {¶ 9} Mr. Jones's second assignment of error is that the trial court incorrectly ordered him to forfeit the $4660 that he had at the time of his arrest. He has argued that his conviction was only for possession and that there was no evidence that he intended to use the money to buy drugs. He has also argued that there was no evidence that he had sold drugs recently and that the trial court should not have used the fact that he did not have a current source of income as the primary factor in determining whether his money should be forfeited. According to Mr. Jones, there are many possible sources from which he could have obtained the money.
 {¶ 10} Mr. Jones's argument is, essentially, that the State failed to present sufficient evidence to meet its burden of proof. Whether a finding of fact is supported by sufficient evidence is a legal question and, like other legal questions, is considered de novo. State v.Thompkins, 78 Ohio St. 3d 380, 386 (1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33.
 {¶ 11} At the time of his offense, Section 2925.42(A)(1) of the Ohio Revised Code provided that "a person who is convicted of . . . a felony drug abuse offense, . . . loses any right to the possession of property and forfeits to the state any right, title, and interest the person may have in that property if . . .: (a) The property constitutes, or is derived directly or indirectly from, any proceeds that the person obtained directly or indirectly from the commission of the felony drug abuse offense or act, [or] (b) The property was used or intended to be used in any manner to commit, or to facilitate the commission of, the felony drug abuse offense or act." *Page 5 
R.C. 2925.42(A)(1) (2000). The State had to prove its entitlement to forfeiture by a preponderance of the evidence. R.C. 2925.42(B)(3)(a).
 {¶ 12} At the forfeiture hearing, Patrolman Heim testified that Mr. Jones had $810 in one of his pockets, $850 in another pocket, and $3000 in his boots. He also had approximately 84 grams of cocaine stored in a small knit pouch. The patrolman said that, based on his training and experience, the way Mr. Jones folded and stored the money was consistent with the sale of narcotics. Patrolman Donald Hall testified that, in Wooster, cocaine costs between $50 and $100 an ounce. Patrolman Hall also said that Mr. Jones told him that he was unemployed at the time of his arrest.
 {¶ 13} This Court concludes that there was sufficient evidence to establish that Mr. Jones used the $4660 to facilitate his possession of cocaine. R.C. 2925.42(A)(1)(b). Using Patrolman Hall's figures, it would have cost Mr. Jones between $4200 and $8400 to purchase the cocaine that he had when he was arrested. If Mr. Jones had enough money to purchase the drugs at the high end of the range, but ended up paying at the low end, he would have had about $4200 left over. That is roughly consistent with the $4660 that he actually had at the time of his arrest. Patrolman Heim testified that the denominations of the bills that Mr. Jones had and the way that he stored the cash on his person were consistent with the sale of narcotics. Mr. Jones's second assignment of error is overruled.
 CONCLUSION {¶ 14} The trial court properly denied Mr. Jones's motion to suppress, and there was sufficient evidence to support its forfeiture order. The judgment of the Wayne County Common Pleas Court is affirmed.
 Judgment affirmed. *Page 6 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
CARR, P. J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.) *Page 1