## In re FORFEITURE OF PROPERTY OF LOUIS et al.

[Cite as *In re Forfeiture of Property of Louis*, 187 Ohio App.3d 504, 2010-Ohio-1792.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23621.

Decided April 23, 2010.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Laura G. Mariani, Assistant Prosecuting Attorney, for appellee, Dayton Police Department.

A. Mark Segreti Jr. and Jeffrey T. Gramza, for appellant, Rufus Moncrief.

FAIN, Judge.

{¶ 1} Rufus Jamal Moncrief appeals from an order of the trial court forfeiting $3,915—found on his person—to the Dayton Police Department. He contends that the Dayton Police Department was not a proper party to whom to order the forfeiture, that the magistrate's findings do not support the conclusion that the money found on his person was the proceeds from a criminal offense, that the trial court erred in adopting the magistrate's decision without an independent review of the magistrate's findings of fact and conclusions of law, and that the trial court erred when it ruled that Moncrief could not rely upon a CD–ROM of the proceedings before the magistrate in prosecuting objections to the magistrate's decision, without furnishing a written transcript.

{¶ 2} We conclude that the Dayton Police Department is not a proper party to whom to order a forfeiture under the authority of R.C. Chapter 2981. Accordingly, the order of forfeiture is reversed, and we find it unnecessary to resolve Moncrief's other contentions.

I

{¶ 3} The facts, as found by the magistrate, are as follows:

{¶ 4} "1) The Respondents, Jason Derrick Louis and Rufus Jamal Moncrief, came into contact with the City of Dayton Police Department on February 29, 2008, at 1334 Tampa Avenue in Dayton, Ohio.

{¶ 5} "2) On February 29, 2008, Detective Barrett, a member of the Narcotics Unit with the Petitioner [Dayton Police Department] observed a Chrysler Sebring ('Sebring') in the parking lot of McDonald's at Edwin C. Moses Blvd. in Dayton, Ohio. According to Detective Barrett, he has made over 100 drug arrests in that area.

{¶ 6} "3) The Sebring had out of state license plates (Indiana) and it was in the McDonald's parking lot for approximately 10 minutes. The Sebring then went from the McDonald's parking lot to the Wendy's parking lot whereupon Detective Barrett observed a Durango come into the parking lot of Wendy's.

{¶ 7} "4) The Sebring and the Durango left the Wendy's parking lot and went to Tampa Avenue. The Sebring and the Durango were followed by Officer House. At 1334 Tampa Avenue, the Sebring parked behind the Durango and the driver of the Sebring went up to the passenger side window of the Durango.

{¶ 8} "5) Officer House went up to the driver's door of the Durango and observed a bag with gel caps. At that point Officer House asked the driver, Respondent Jason Derrick Louis, to step out of the Durango. Office[r] House found 35 gel caps of heroin and placed Respondent Jason Derrick Louis under arrest for Possession and Trafficking in Drugs.

{¶ 9} "6) Respondent Jason Derrick Louis had $400.00 in his wallet and $1,045.00 in U.S. currency in his left pocket of his pants.

{¶ 10} "7) Detective House never observed an actual drug transaction between the driver of the Sebring and the passenger in the Durango.

{¶ 11} "8) Detective Shawn Copley was working the Southwest area of Dayton near the Econo Lodge on Edwin C. Moses Blvd. when his assistance was requested at a stop by the Petitioner.

{¶ 12} "9) Detective Copley made contact with the passenger in the Durango and advised the passenger to keep his hands in his lap. The passenger, Respondent Rufus Jamal Moncrief[,] was asked to step out of the Durango and was patted down. Detective Copley found a bag of drugs in the left front pocket of Respondent's pants and a large sum of money in his right front pocket. $3,915.00 in U.S. currency was seized from Respondent Rufus Jamal Moncrief on February 29, 2008.

{¶ 13} "10) The U.S. currency in possession of Respondent Jason Derrick Louis was money that had been given to him by his girlfriend, Jane Benton. This money was given to him approximately a day or two before February 29, 2008.

{¶ 14} "11) Jane Benton filed a Federal Income Tax Return in late February 2008 and was to receive a refund in excess of $5,600.00. She filed for the refund through Jackson Hewitt Tax Service and gave $4,200.00 of the refund to Respondent Jason Derrick Louis so that they could move to North Carolina."

{¶ 15} The Montgomery County Prosecutor brought "this civil action for forfeiture to the City of Dayton Police Department of personal property" seized from Louis and Moncrief, including the $3,915 seized from Moncrief. Following a hearing, the magistrate decided that the money seized from Moncrief was to be forfeited to the City of Dayton Police Department and that the money seized from Louis was to be returned to Louis.

{¶ 16} Moncrief objected to the magistrate's decision. While his objections were pending, Moncrief moved for leave to submit a CD–ROM of the evidence before the magistrate, in lieu of a written transcript. This motion was overruled.

{¶ 17} The trial court overruled Moncrief's objections and adopted the decision of the magistrate, directing the forfeiture of the $3,915 seized from Moncrief, as the order of the court. From that order, Moncrief appeals.

## II

{¶ 18} Moncrief's first assignment of error is as follows:

{¶ 19} "A city police department is not a legal entity with the authority to sue or the capability of being sued in a civil action in the Ohio courts and the action filed is a nullity and must be dismissed.

{¶ 20} "A. Statutory Framework: Only State or Political Subdivision Have Standing.

{¶ 21} "B. Only A Legal Person Can Sue: Police Department Is Not Political Subdivision."

{¶ 22} The broader issue is whether a municipal police department is sui juris—that is, whether it is capable of bringing suit or being sued. The narrower issue is whether a municipal police department, assuming it is sui juris, is a proper party petitioner to a forfeiture proceeding under R.C. Chapter 2981. Because we conclude that a municipal police department is not a proper party petitioner to a Chapter 2981 forfeiture proceeding, we find it unnecessary to decide the broader issue.

{¶ 23} At the oral argument, the petitioner-appellee appeared to concede that the Dayton Police Department is not a political subdivision of the state of Ohio, but argued that under R.C. Chapter 2981, it does not have to be.

{¶ 24} We agree that the Dayton Police Department is not a political subdivision.

{¶ 25} "A political subdivision of the state is a geographic or territorial division of the state rather than a functional division of the state. Almost invariably the statutory definitions of 'political subdivision' involve a geographic area of the state which has been empowered to perform certain functions of local government within such geographic area. Accordingly, a 'political subdivision of the state' is a geographic or territorial portion of the state to which there has been delegated certain local governmental functions to perform within such geographic area." *Fair v. School Emp. Retirement Sys. of Ohio* (1975), 44 Ohio App.2d 115, 119, 73 O.O.2d 101, 335 N.E.2d 868.

{¶ 26} The magistrate relied upon *Winegar v. Greenfield Police Dept.* (Mar. 27, 2002), Highland App. No. 00CA18, 2002 WL 853460, for the proposition that a police department is a political subdivision for purposes of the political-subdivision-tort-liability act, specifically, R.C. 2744.01(F). We respectfully disagree with the holding in that case. "Political subdivision" is defined in R.C. 2744.01(F) as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographical area smaller than that of the state." The statute then goes on to list a number of specific examples of political subdivisions, but a municipal police department is not one of them.

{¶ 27} It may well be that a municipal police department is not an entity capable of being sued, so that it would not need the immunity provided by R.C. Chapter 2744; we need not decide that issue. We conclude that a municipal police department, while being a department of a political subdivision—the city—is not itself a body corporate and politic responsible for governmental activities in a geographical area smaller than that of the state.

{¶ 28} At argument, the petitioner took the position that it did not need to be a political subdivision for the forfeiture action to proceed. It took the position that the action was against the property, that it was filed by the Montgomery County Prosecutor, and that the forfeited money, by the statute, is to be distributed to the prosecutor's law-enforcement trust fund and the police department's law-enforcement trust fund. R.C. 2981.13(B)(4)(b). All that may be so. But the prayer was for the money to be forfeited "to the City of Dayton Police Department"; and the order of the magistrate, adopted as the order of the trial

court, was for the money to "be forfeited as proceeds to Petitioner [identified in the second paragraph of the order as the City of Dayton Police Department]."

{¶ 29} The statute authorizes the prosecutor of the political subdivision in which the property is located to commence a civil-forfeiture action by filing in the court of common pleas of the county in which the property is located "a complaint requesting an order that forfeits the property to the state or a political subdivision." R.C. 2981.05(A). Thus, the Montgomery County Prosecutor is authorized to commence the action on behalf of the state or a political subdivision—in this case, the city of Dayton.

{¶ 30} The process described in the statute suggests that the state or political subdivision is the party plaintiff. R.C. 2981.03(B) provides that the prosecutor prosecuting an action that allows forfeiture "under this chapter" may seek an order of court "taking any reasonable action necessary to preserve the reachability of the property," and that the court may issue an order having that effect "at any of the following times:

{¶ 31} "(a) * * *;

{¶ 32} "(b) Prior to the filing of a complaint, an indictment, or information alleging the property to be subject to forfeiture under section 2981.02 of the Revised Code [which covers criminal, juvenile delinquency, or civil forfeiture proceedings], if, * * *, the court determines that all of the following apply:

{¶ 33} "(i) There is a substantial probability *the state or political subdivision will prevail* on the forfeiture issue.

{¶ 34} "(ii) * * *.

{¶ 35} "(iii) * * *." (Emphasis added.)

{¶ 36} The italicized phrase: "the state or political subdivision will prevail," indicates that it is the state or political subdivision that is the party plaintiff in the proceeding, not merely some entity that may ultimately benefit from the distribution of the forfeited proceeds.

{¶ 37} We conclude that an R.C. Chapter 2981 forfeiture proceeding must be brought on behalf of the state or a political subdivision, not a municipal police department. Moncrief's first assignment of error is sustained.

### III

{¶ 38} Moncrief's second and third assignments of error are as follows:

{¶ 39} "The trial court judgment is contrary to law in that the magistrate's findings of fact do not support a conclusion that plaintiff met its burden of proof that money was proceeds of illegal offense, and the trial court erred in adopting

the magistrate's report without an independent review of the findings of fact and conclusions of law presented by the magistrate.

{¶ 40} "The trial court erred and/or abused its discretion in holding as a matter of law that respondent could not use the c.d. video recording as an alternative transcript in this case and ignoring that he complied with the local rule of court."

{¶ 41} In view of our disposition of Moncrief's first assignment of error, we find it unnecessary to decide his second and third assignments of error, which are overruled as moot.

## IV

{¶ 42} Moncrief's first assignment of error having been sustained, and his second and third assignments of error having been overruled as moot, the order of forfeiture from which this appeal is taken is reversed.

*Order reversed.*

DONOVAN, P.J., and GRADY, J., concur.