[Cite as *Marmet Drug Task Force v. Paz*, 2012-Ohio-4882.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

MARMET DRUG TASK FORCE,

    PETITIONER-APPELLEE,                  CASE NO. 9-11-60

    v.

OSCAR PAZ,

                                   **O P I N I O N**

    RESPONDENT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 11 CV 0241

**Judgment Reversed**

Date of Decision: October 22, 2012

APPEARANCES:

    *Robert E. Wilson* for Appellant

    *Brent W. Yager and Gregory A. Perry* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Oscar Paz, appeals the judgment of the Court of Common Pleas of Marion County ordering the forfeiture of $4,450.00 in United States currency that was seized from Paz's person after a traffic stop. On appeal, Paz argues that the trial court's order should be reversed because (1) Petitioner-Appellee, Marmet Drug Task Force ("Petitioner"), lacked standing to initiate forfeiture proceedings against him; and (2) Petitioner presented insufficient evidence to establish that the seized money was connected to criminal activity. For the reasons that follow, we reverse the trial court's judgment.

{¶2} This matter arose from an April 4, 2011 incident in which Marion police authorities stopped Paz's truck due to inoperative taillights. When Officer Andrew Isom approached the vehicle, he smelled the odor of marijuana from the truck cabin. Paz was driving the truck at the time of the stop and Sharee Fraker was seated on the passenger side. Due to Officer Isom's previous investigations, he recognized both Paz and Fraker as persons with criminal drug trafficking histories.

{¶3} After Officer Isom informed Paz of the infraction, Paz requested to get out of the vehicle so he could inspect the taillights. When Paz got out of the truck, Officer Isom performed a pat down search. In the course of the search, he discovered a knife and a substantial amount of cash on Paz's person.

{**¶4**} There is a dispute as to where on Paz's person this cash was located. Officer Isom, in his testimony and the police report, indicated that he found $3,100.00 in Paz's right pocket and $1,350.00 in his left pocket. Conversely, Paz testified that all of the cash was in one pocket. There is no dispute that the cash was in various denominations. Paz also admitted that there was marijuana in his truck and that he handed over two marijuana joints to the authorities after the pat-down search. A canine positively alerted for drugs as well, which led to further investigation and a discovery of burnt marijuana seeds in the truck cabin.

{**¶5**} There is significant divergence between the authorities' and Paz's versions of the events that occurred next. Officer Isom testified that Paz failed to identify the correct amount of money and instead said he had around $3,000.00. Officer Isom's testimony also indicates that Paz provided a variety of reasons for his possession of the money. First, Paz said he had withdrawn the money from the bank so he could buy a car for Fraker. Then, he offered that the money was for the purpose of visiting his mother in Florida. Finally, Paz stated that he had just been paid for his work with a pest control business in Columbus, but he provided no further details as to the company's name or the amount of his wages. Officer Isom wrote these purported reasons in the incident's police report, which Paz signed, although he said he did not read the report before signing it.

{¶6} Meanwhile, Paz testified that he never said that he had $3,000.00. Rather, he claimed to have told the authorities that he had $4,500.00 on his person. Paz also denied saying that the money was from his bank account, that it was for his trip to Florida, or that it was from his alleged paycheck with the Columbus pest control business. He further claimed to have called Richard Holmes, his cousin and alleged boss, during the interaction but that Officer Isom refused to talk to him to corroborate Paz's employment. Additionally, Paz testified that he told the authorities that they were not entitled to know the source of the money.

{¶7} After his interaction with Paz, Officer Isom decided to seize the cash since he believed it constituted proceeds from drug trafficking. On April 7, 2011, Petitioner filed a petition for civil forfeiture under R.C. 2981.05, which identified the $4,450.00 cash as subject to forfeiture and Paz as the "party in interest." (Docket No. 1, p. 1). The incident also gave rise to separate criminal proceedings in which the State charged Paz with drug abuse in violation of R.C. 2925.11.[1]

{¶8} After the forfeiture petition was filed, the trial court set a hearing date of May 19, 2011. Paz did not respond to the petition until May 16, 2011, when he filed a motion to return the seized cash. The sole basis for the motion was that there was insufficient evidence to connect the seized cash with criminal activity. Attached to the motion was an affidavit from Paz, who now claimed that the

---

[1] There is no indication in the record as to disposition of the criminal proceedings.

money represented a portion of a $5,000.00 loan that he received from Heidi Hardy. Also attached to the motion was a purported note memorializing the $5,000.00 loan. The note, dated April 1, 2011 and notarized by Iris Layne, stated that the loan was so Paz could "open a pest control business." (Docket No. 6, p. 7). Further, the note indicated that the "money is to go to insurance, chemicals, truck, and a[n] office space." *Id.*

{¶9} Since Paz's motion was filed so close to the original hearing date, the trial court continued the hearing until July 18, 2011. At the hearing, in addition to the above evidence regarding Paz's interaction with the authorities, testimony was adduced from the following four witnesses.

{¶10} First, Layne testified regarding the circumstances of the note's notarization. She indicated that she had no previous relationship with Paz or Hardy and that her mother and grandson signed the note as witnesses. Further, she remembered notarizing the note on April 1, 2011 because her grandson played an April Fool's joke on her that day. Finally, she vouched that she would not sign a backdated document: "Well, I never looked at the calendar, so – it was – you know, it had to be [April 1, 2011] cause I usually – I won't backdate nothing." July 18, 2011 Hearing Tr., p. 9.

{¶11} Second, Paz testified that the seized money represented the loan from Hardy. When questioned why the amount of cash seized was less than the

$5,000.00 loan, Paz said that he had to use $550.00 to pay his rent. He said that the money was going to be used to start a pest control business, but that despite the note's language, he had not made arrangements to procure insurance, a new truck, or office space. However, Paz did testify that he had been in the process of obtaining chemicals for the business.

{¶12} Paz also indicated that he was planning to start the business with a partner, but that the forfeiture proceedings precluded him from further pursuing the opportunity. At first, Paz refused to identify his business partner but then relented, upon instruction by the trial court, and testified that his partner's name was Mike Wilson. Moreover, Paz admitted that he did not tell Officer Isom about the loan or purported business plan during the April 4, 2011 incident. He also acknowledged that he did not bring the note or loan to the attention of the police after the seizure.

{¶13} Third, Hardy testified that she had indeed provided the $5,000.00 loan to Paz so that he could start a pest control business. She said that Paz was going to start the business with Richard Holmes, his cousin, and not the Mike Wilson that Paz identified in his testimony. Hardy indicated that she did not know who Mike Wilson was.

{¶14} Hardy is the mother of two of Paz's children and she has physical custody of them. She is a licensed practical nurse who earned a federal adjusted

gross income of $30,283.00 in 2010. She further received a $7,781.00 federal tax refund and a $416.00 Ohio tax refund in early 2011 as a result of her 2010 earnings. Hardy testified that she used a portion of these tax refunds to provide the $5,000.00 loan to Paz.

{¶15} Hardy indicated that she does not maintain a bank account. She also stated that she had a negative credit history, which included approximately $100,000.00 of debts and several collection attempts by her creditors. She had received public assistance, including food stamps and medical cards, before 2011. Meanwhile, Hardy never collected any child support payments from Paz.

{¶16} In August 2010, Hardy did attempt to obtain child support from Paz. However, Paz became angry at a meeting with the family services caseworker, which prompted Hardy to drop her case because she believed "[Paz] can make things very hard on me if he wanted to." *Id*. at 68. When asked why Hardy would give a $5,000.00 loan to Paz in light of her outstanding debts, she replied: "Because I want him to help me. I mean, he was supposed to help me, you know. He was supposed to start this business, now you guys have the money, he can't possibly help me if he has no money to start a business now." *Id*. at 75.

{¶17} Fourth, Officer Isom testified as follows regarding his decision to seize the money:

> Q: The – You said the evidence that you had there at the scene that night, what – you said there was intel, as far as what you saw or

observed that night at the scene, what other evidence was there in terms of your decision-making process?

A:    [Paz's] past history.

Q:    Okay.  What else?

A:    Just intel that we had – that narcotics had received information on him.

Q:    Did the fact that you took drugs from the car influence your decision?

A:    Sure it did.

Q:    Large sums of cash, is that something you've seen in your experience as a Police Officer in the drug trade?

A:    Yes. * * *

Q:    Anything else you can think of from that night that would make you think this was drug money as opposed to some other innocent explanation?

A:    Different denominations, separated in different pockets.

Q:    Different denominations, do you recall what types of denominations we're talking about?

A:    20's, 50's, hundreds, fives, 10's. *Id*. at 93-94.

Officer Isom said that every denomination is used in drug transactions and that the trade is based on cash.  On cross-examination, Officer Isom testified as follows regarding the connection between the seized money and drug trafficking:

Q:    Where?  Where did the drug transaction take place? When did it take place?

A:     I couldn't tell you that, sir.

Q:     Don't even have a clue, do you?

A:     Do I have a clue?  Yeah, I have a clue.

Q:     I mean, can you even put that money with somebody else in a drug transaction?

A:     I cannot, sir.

Q:     Can you put that money with somebody else that he was going to to (sic?) buy drugs?

A:     I can't, no. * * *

Q:     Don't know where it came from, did you?

A:     Where exactly it came from?  No, sir.

Q:     Did you ever even test that money to see whether there was any residue on it?

A:     We don't do that anymore.

Q:     That's not my question.  My question is did you do it?

A:     No. *Id.* at 102-03.

{¶18} On August 12, 2011, Petitioner moved to supplement evidence and requested a hearing.  The basis for the motion was that Officer Isom, in a separate investigation, discovered that Layne had previously backdated motor vehicle titles.  As a result, she pleaded no contest to a charge of violating the duties of a notary public under R.C. 147.14.  While the trial court did not hand down a formal order on the motion, it apparently granted it since it conducted a second hearing on

November 15, 2011 and utilized the new information in its final order. During the second hearing, Layne admitted to the conviction. But, she also reiterated that she did not backdate the note memorializing the $5,000.00 loan and that the note was notarized on April 1, 2011.

{¶19} On November 15, 2011, the trial court ordered that the seized money be forfeited to Petitioner. The trial court found that Layne's "credibility is seriously in doubt" (Docket No. 32, p. 3) and that Paz's explanation for his possession of the money was "incredible" (*id.* at 5). It summarized Officer Isom's reasons for viewing the seized cash as proceeds from drug trafficking as follows:

1. His knowledge that both Paz and Fraker were previously convicted of drug trafficking;
2. His awareness that current police department intelligence indicated that Paz was still dealing in Marion;
3. His observation of the odor of marijuana coming from the inside of [Paz's] vehicle;
4. [Paz's] admission that there [were] drugs in the car;
5. A drug dog's alerting on the vehicle;
6. [Paz's] initial statement that he had $3,000 on him when in fact he had $4,450, separated into two pockets;
7. [Paz's] claim that he had just taken the money out of the bank to buy a car but the deal had fallen through;
8. [Paz's] claim that he had just gotten paid but stated that he only sometimes worked for a pest control business in Columbus and was unable to say when he was last paid, whether he was paid by cash or check, or how much he was paid;
9. [Paz] changing his story to say that he had the money at home and was intending to use it to travel to Florida to see his mother.
[Officer] Isom further testified that drug traffickers deal exclusively in cash and usually in small denominations which is what was obtained from [Paz] in this case. All of this tended to indicate to the

patrolmen that the case involved in this particular seizure was drug money. (*Id.* at 4-5).

**{¶20}** Paz filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**PETITIONER MARMET DRUG TASK FORCE IS NOT A PROPER PARTY PETITIONER TO A REVISED CODE CHAPTER 2981 FORFEITURE PROCEEDING.**

*Assignment of Error No. II*

**THERE WAS NO EVIDENCE THAT THE MONEY SEIZED FROM THE RESPONDENT, OSCAR PAZ WAS SUBJECT TO FORFEITURE AS THAT TERM IS DEFINED IN REVISED CODE 2981.01(11).**

**{¶21}** Due to the nature of the assignments of error, we elect to address them out of order.

*Assignment of Error No. II*

**{¶22}** In his second assignment of error, Paz argues that Petitioner failed to present sufficient evidence to support the trial court's forfeiture order. We agree.

**{¶23}** R.C. 2981.05(A) authorizes county prosecutors to initiate civil actions to obtain the forfeiture of seized property that was involved in criminal activity. In such civil actions, the prosecutor bears the burden of proof to show by a preponderance of the evidence that the seized property is subject to forfeiture under R.C. 2981.02. R.C. 2981.05(D); *State v. Brownridge*, 3d Dist. No. 9-09-24,

2010-Ohio-104, ¶ 21. R.C. 2981.02(A)(2) provides that "proceeds derived from or acquired through the commission of an offense" may be forfeited provided the requisite showing is made. Further, "[t]rial courts are not limited to considering only the underlying criminal offense when deciding a forfeiture action, and may pursue property derived from any act that would constitute a felony drug offense, regardless of a defendant's conviction or acquittal on such an offense." *Brownridge* at ¶ 25. Accordingly, it is immaterial to civil forfeiture proceedings whether the defendant is also charged or convicted of an underlying criminal offense. *See* R.C. 2981.01(B)(10) (defining "offense" as "any act or omission that could be charged as a criminal offense . . ., whether or not formal criminal proceedings . . . began at the time the forfeiture is initiated.").

**{¶24}** Generally, forfeiture is not favored in Ohio. *State v. Clark*, 173 Ohio App.3d 719, 2007-Ohio-6235, ¶ 8 (3d Dist.). "Whenever possible, [forfeiture] statutes must be construed so as to avoid a forfeiture of property." *State v. Lilliock*, 70 Ohio St.2d 23, 26 (1982). Moreover, forfeiture is only appropriate when "the expression of the law is clear and the intent of the legislature manifest." *Id.*

**{¶25}** We do not disturb a trial court's findings in forfeiture cases if there is "'some competent, credible evidence going to all the essential elements of the case.'" *State v. Watkins*, 7th Dist. No. 07 JE 54, 2008-Ohio-6634, ¶ 34, quoting,

*C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. When employing this standard of review, a court has an obligation to presume the findings of the trier of fact are correct. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 79-80 (1984). Mere disagreement over the credibility of witnesses or evidence is not sufficient reason to reverse a judgment. *Id.* at 80.

{¶26} Here, the trial court indicated that Petitioner offered ten items of evidence that supported an order of forfeiture. These items essentially established that: (1) Paz has a criminal history and is *suspected* of drug trafficking by the Marion police authorities; (2) Paz had a small amount of marijuana in his possession on the night of the traffic stop; (3) Paz's explanation for the money was unbelievable; and (4) Officer Isom testified that Paz was found with small denominations of cash in separate pockets, which is typical for drug transactions. Based on prevailing case law, we find that these items are insufficient to show by a preponderance of the evidence that the seized cash constitutes proceeds from Paz's alleged drug trafficking.

*Evidence of Paz's Criminal History and Suspicion of Drug Trafficking*

{¶27} It is a central tenet of our legal system that an individual's past conduct does not prove that the individual is currently engaged in the same type of criminal behavior. *See, e.g.*, Evid.R. 404(A) ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in

conformity therewith."); *State v. Pollard*, 11th Dist. No. 99-A-0072 (Apr. 13, 2001) ("[I]t ought to be self-evident that a criminal conviction cannot be based, in whole or in part, upon the 'bad character of the defendant' theory."). Further, Petitioner cannot rely on unsubstantiated claims and suspicions to support either civil or criminal penalties. *See, e.g.*, R.C. 2981.05(D) ("The court shall issue a civil forfeiture order if it determines that the prosecutor has *proved by a preponderance of the evidence . . . .*"); *Hunt v. Charles J. Rogers Trans. Co.*, 164 Ohio St. 329, 333 (1955) ("An inference which is based solely and entirely upon another inference and which is unsupported by any additional fact is an inference upon an inference and is universally condemned."). Despite these well-established principles, Petitioner has made bald assertions that there is "intel" connecting Paz to drug trafficking (July 18, 2011 Hearing Tr., p. 93-94) and pointed to Paz's previous drug convictions to support its forfeiture action. We follow the principle that past behavior and unsubstantiated allegations do not prove current conduct and find that this "evidence" is insufficient to show a nexus between the seized cash and any drug trafficking activity.

*Paz's Possession of Marijuana During Traffic Stop*

**{¶28}** Petitioner does not cure its reliance on Paz's past conduct and unsubstantiated claims about his current activities by emphasizing that Officer Isom found marijuana in Paz's truck during the traffic stop. Courts have

consistently found that the discovery of small amounts of illegal drugs does not indicate that a person is involved in the drug trade as a seller. Instead, such a discovery suggests that the drugs are for personal use. *See, e.g.*, *State v. $765 in United States Currency*, 181 Ohio App.3d 162, 2009-Ohio-711, ¶ 27 (5th Dist.) (reversing forfeiture order where authorities discovered the person in interest smoking marijuana in his automobile and a small amount of marijuana on his person, which suggested personal use and did not support forfeiture of seized cash); *State v. Ali*, 119 Ohio App.3d 766, 767, 770 (8th Dist. 1997) (reversing forfeiture order where authorities discovered some marijuana seeds and a rock of cocaine along with seized cash because small amount of drugs suggested personal use and did not support forfeiture); *State v. Roberts*, 102 Ohio App.3d 514, 518-19 (9th Dist. 1995) (affirming denial of forfeiture where authorities found 2.813 grams of heroin, 0.047 grams of cocaine, and paraphernalia along with seized cash because small amount of drugs suggested personal use and not that cash was product of drug trade).

{¶29} Here, Paz was found with only two marijuana roaches and some burnt marijuana seeds. This limited amount in no way suggests that Paz was engaged in drug trafficking. *Compare Dayton Police Dept. v. Thompson*, 2d Dist. No. 24790, 2012-Ohio-2660, ¶ 13 (finding that person in interest was involved in drug trafficking where police discovered an amount of crack cocaine on him that

was 233 times greater than the typical amount for personal use); *State v. Jones*, 9th Dist. No. 08CA0033, 2009-Ohio-670, ¶ 12 (finding that person in interest was involved in drug trafficking where a pouch with 84 grams of cocaine was found on his person along with the seized money); *State ex rel. Mason v. $17,000 in U.S. Currency*, 8th Dist. No. 80941, 2003-Ohio-993, ¶ 2 (finding that person in interest was involved in drug trafficking because police discovered 10 kilos of cocaine on him). Consequently, we find that Paz's mere possession of a small amount of marijuana does not support the trial court's forfeiture order.

*Deficiencies in Paz's Explanation for the Seized Cash*

**{¶30}** Petitioner additionally focuses on the glaring deficiencies in Paz's explanation for his possession of the money to support the forfeiture order. Indeed, the record reflects that, at its best, Paz's explanation is tenuous. The trial court found his version to be unworthy of credence, and we decline to disturb this finding. *See In re T.W.*, 3d Dist. No. 9-10-63, 2012-Ohio-2361, ¶ 20 ("The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses.").

**{¶31}** But, the central inquiry here is not whether Paz has developed a credible explanation. The burden rests on Petitioner to show how the seized cash constitutes proceeds from drug trafficking and flaws in Paz's story do not assist in Petitioner's case. *See, e.g.*, *$765 in United States Currency*, 181 Ohio App.3d

162, 2009-Ohio-711, at ¶ 28 (reversing trial court's forfeiture order even though authorities were unable to corroborate person in interest's explanation for his possession of money); *Roberts*, 102 Ohio App.3d at 519 (affirming denial of forfeiture even though the defendant's alibi that he was driving to Cleveland late at night to purchase a car was "implausible"). Petitioner failed to make a sufficient showing that Paz's seized cash resulted from drug trafficking, which renders Paz's strained explanation immaterial to the disposition of this matter.

*The Denominations of the Seized Cash*

**{¶32}** The trial court also based its forfeiture order partly on Officer Isom's purported testimony that the seized cash was in small denominations, which suggested drug trafficking. In support of this finding, Petitioner cites to *State v. Owens*, 9th Dist. No. 23267, 2007-Ohio-49, and *State v. Balwanz*, 7th Dist. No. 02-BE-37, 2004-Ohio-1534, both of which allowed forfeiture since the person in interest was found with substantial amounts of money in small denominations. But, the record reveals that Officer Isom testified to the contrary. He stated that the seized money included "different denominations" and there is no indication in his testimony that the seized cash was predominantly composed of smaller denominations. July 18, 2011 Hearing Tr., p. 93-94. In light of this testimony, *Owens* and *Balwanz* are inapposite here and the trial court's finding in this regard was erroneous.

*Location of the Seized Cash on Paz's Person*

**{¶33}** The trial court found that Paz had the seized cash separated into his two pants pockets. Under certain scenarios, the location of seized cash might support a forfeiture order. For instance, in *Jones*, the seized cash was found in both the defendant's pockets and his boots. *Jones*, 2009-Ohio-670, at ¶ 12. According to the investigating officer's testimony, this method of carrying cash is common in the drug trade. *Id*. Based on this and the fact that the defendant was found with a significant amount of drugs, the trial court properly found that the defendant's cash constituted proceeds from drug trafficking. *Id*. at ¶ 13.

**{¶34}** Here, Officer Isom did testify that the location of the seized money on Paz's person was consistent with drug sellers. But, there was no other evidence tying the seized money to drug trafficking. Unlike *Jones*, Paz only had a small amount of illegal drugs on his person. As a result, Paz's possession of the money here is more akin to case law that stands for the proposition that the mere possession of money is not inherently illegal. *See Ali*, 119 Ohio App.3d at 770 (finding that the defendant's possession of money and small amount of drugs was insufficient to support forfeiture). Consequently, the location of the money on Paz's person, standing by itself, does not support forfeiture.

*The Inapplicability of* Balwanz

**{¶35}** Based on the foregoing evidence, Petitioner suggests that we should follow *Balwanz* and find that the trial court's forfeiture order was appropriate. But, a review of *Balwanz* and the record in this matter discloses that there are significant factual differences that render *Balwanz* inapplicable here. There, the defendant led police on a high speed automobile chase. *Balwanz* at ¶ 2. During the course of the chase, he threw a plastic bag out of his automobile, which was later discovered to have 193.5 grams of cocaine in it. Further, the cocaine was individually wrapped in seven smaller baggies and testimony indicated that such packaging was consistent with drug sales. *Id*. at ¶ 4, 24-25.

**{¶36}** This matter presents significantly different facts. Rather than leading authorities on a car chase, Paz was compliant with Officer Isom's requests and even admitted to the possession of a small amount of marijuana during the traffic stop. Unlike *Balwanz*, Paz had two marijuana roaches and not a large plastic bag with individually wrapped cocaine. In light of these manifest dissimilarities, Petitioner's reliance on *Balwanz* is misplaced and we decline to follow it here.

*Officer Isom's Testimony*

**{¶37}** The most prominent flaw with the trial court's order and Petitioner's argument is the failure to account for Officer Isom's following testimony regarding the connection between the seized cash and drug transactions:

Q:     Where?  Where did the drug transaction take place? When did it take place?

A:     I couldn't tell you that, sir.

Q:     Don't even have a clue, do you?

A:     Do I have a clue?  Yeah, I have a clue.

Q:     I mean, can you even put that money with somebody else in a drug transaction?

A:     I cannot, sir.

Q:     Can you put that money with somebody else that he was going to to buy drugs?

A:     I can't, no. . . .

Q:     Don't know where it came from, did you?

A:     Where exactly it came from?  No, sir.

Q:     Did you ever even test that money to see whether there was any residue on it?

A:     We don't do that anymore.

Q:     That's not my question.  My question is did you do it?

A:     No.  July 18, 2011 Hearing Tr., p. 102-03.

The foregoing testimony is effectively an admission by Petitioner that it cannot prove that the seized cash constitutes proceeds from drug trafficking.  Rather than offering concrete proof to carry its burden, Petitioner relied on a "clue" as to Paz's purported drug activities.  *Id*. at 102.  When pressed as to the evidence behind the

authorities' hunch, Officer Isom relented that he could not put the seized cash with anybody in a drug transaction. This is a fatal flaw and we cannot overlook it.

**{¶38}** In sum, Petitioner offered evidence that Paz has a criminal history, is suspected of drug trafficking, and had a small amount of marijuana on him when the cash was seized. Further, there was no testimony to indicate that the amount of seized money was predominantly in small denominations so as to suggest drug trafficking. This paucity of evidence makes the observation that Paz had money in both of his pockets meaningless since mere possession of money is not inherently illegal.

**{¶39}** Consequently, Petitioner's evidence does not prove by a preponderance that Paz's money constitutes proceeds from drug trafficking. Indeed, Officer Isom's admission that he cannot tie the seized cash to any drug transaction fatally handicaps Petitioner's argument. As a result, we find that Petitioner failed to present sufficient evidence to show that the seized money was subject to forfeiture under R.C. 2981.02.

**{¶40}** Accordingly, we sustain Paz's second assignment of error.

*Assignment of Error No. I*

**{¶41}** In his first assignment of error, Paz essentially contends that Petitioner is not a proper party petitioner to bring this civil forfeiture action

because it is not a political subdivision. Since Paz did not assert this defense in the trial court, we find that Paz has waived this argument.

{¶42} It is well-established that an argument that is not advanced in the trial court is waived for the purposes of appeal. *See, e.g.*, *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, ¶ 34; *Lillie v. Meachem*, 3d Dist. No. 1-09-09, 2009-Ohio-4934, ¶ 20. In the hearing on this matter, Paz only asserted the defense that Petitioner lacked sufficient evidence to show a nexus between the seized cash and criminal activity. He never contended that Petitioner lacked the ability to bring this action. Consequently, the argument is waived. *See Dayton Police Dept. v. Byrd*, 189 Ohio App.3d 461, 2010-Ohio-4529, fn. 1 (2d Dist.) (allowing police department to maintain forfeiture action where neither party raised issue of police department's status as a proper party petitioner under forfeiture statutes); *Dayton Police Dept. v. Grigsby*, 2d Dist. No. 23362, 2010-Ohio-2504, fn. 2 (same).

{¶43} Although we find that the argument is waived, we note that Petitioner is indeed not a proper party petitioner under the forfeiture statutes. R.C. 2981.05(A) authorizes "[t]he prosecutor of the *political subdivision* in which property [subject to forfeiture] is located [to] commence a civil forfeiture action * * *." (Emphasis added.) R.C. 2981.05(A). The forfeiture statutes do not define

political subdivision, so we resort to the general definition typically used by the courts:

> A political subdivision of the state is a geographic or territorial division of the state rather than a functional division of the state. Almost invariably the statutory definitions of 'political subdivision' involve a geographic area of the state which has been empowered to perform certain functions of local government within such geographic area. Accordingly, a 'political subdivision of the state' is a geographic or territorial portion of the state to which there has been delegated certain local governmental functions to perform within such geographic area. *Fair v. School Emps. Retirement Sys.*, 44 Ohio App.2d 115, 119 (10th Dist. 1975).

{¶44} *In re Forfeiture of the Property of Louis*, 187 Ohio App.3d 504, 2010-Ohio-1792 (2d Dist.) provides significant guidance here. There, the court, applying the above definition, found that "a municipal police department * * * is not itself a body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." *Id*. at ¶ 27. As a result, the Dayton Police Department was not a political subdivision and consequently was not a proper party petitioner that could maintain a civil forfeiture action. *Id*. at ¶ 37.

{¶45} Here, Petitioner is a joint police task force between the Marion County Prosecuting Attorney, the Marion County Sheriff's Office, and the City of Marion Police Department. Like the Dayton Police Department, Petitioner is not responsible for the governmental activities in a limited geographical area. As such, it is not a political subdivision and it not a proper party petitioner under R.C. 2981.05(A).

Case No. 9-11-60

{¶46} Petitioner's argument that this matter is merely "mis-captioned" and that "there is no question" of the Marion County Prosecuting Attorney's authority here fails to appreciate the requirements of the forfeiture statutes. Appellee's Br., p. 9. R.C. 2981.05(A) is explicit that prosecuting attorneys are only empowered to bring actions on behalf of political subdivisions. Thus, there is no question that the Marion County Prosecuting Attorney is unable to bring an action on behalf of the Marmet Drug Task Force, as it did in this matter. Rather, for the Marion County Prosecuting Attorney to comply with the dictates of R.C. 2981.05(A) and to leave no question as to its authority, it must bring civil forfeiture actions on behalf of Marion County.

{¶47} Despite the merits of Paz's contention on the issue of Petitioner's status as a proper party petitioner, it is still indisputable that Paz waived this argument by failing to assert it in the trial court.

{¶48} Accordingly, Paz's first assignment of error is overruled.

{¶49} Having found no error prejudicial to Paz, in the particulars assigned and argued in the first assignment of error, but having found error prejudicial to Paz, in the particulars assigned and argued in the second assignment of error, we reverse the judgment of the trial court.

*Judgment Reversed*

**WILLAMOWSKI, J., concurs.**
**PRESTON, J., concurs in Judgment Only.**
**/jlr**

-24-