[Cite as *State v. Bustamante*, 2013-Ohio-4975.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,          CASE NO. 13-12-26

      v.

TYLER J. BUSTAMANTE,          O P I N I O N

      DEFENDANT-APPELLANT.

---

STATE OF OHIO,

      PLAINTIFF-APPELLEE,          CASE NO. 13-13-04

      v.

TYLER J. BUSTAMANTE,          O P I N I O N

      DEFENDANT-APPELLANT.

---

Appeals from Seneca County Common Pleas Court
Trial Court Nos. 11-CR-0209 and 11 CR 0209

Judgments Affirmed in Part, Reversed in Part and Causes Remanded

Date of Decision: November 12, 2013

---

APPEARANCES:

    *Anthony D. Hall* for Appellant

    *Derek W. DeVine and Heather N. Jans* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant Tyler J. Bustamante ("Bustamante") appeals the June 7, 2012, judgment entry sentencing Bustamante to 22 months in prison after Bustamante was convicted in a bench trial of Trafficking in Heroin in violation of R.C. 2925.03(A)(1),(C)(6)(a), a felony of the fifth degree, Possession of Drugs (heroin) in violation of R.C. 2925.11(A),(C)(6)(a), a felony of the fifth degree, and Possession of Drugs (boldenone undecylenate) in violation of R.C. 2925.11(A),(C)(2)(a), a felony of the fifth degree.[1] Bustamante also appeals the January 3, 2013, judgment entry ordering that certain property of Bustamante be forfeited.

{¶2} The facts relevant to this appeal are as follows. On September 8, 2011, during a controlled drug buy, Bustamante sold heroin to a confidential informant in exchange for a Lowe's gift card in the amount of $423. The sale took place at Bustamante's residence. After the heroin was given to the confidential informant, Bustamante sat in his vehicle in the driveway of his residence with the informant while the informant snorted some of the heroin. The informant claimed that Bustamante ordered him to use the heroin.

---

[1] Possession of boldenone was elevated from a first degree misdemeanor to a felony of the fifth degree due to the court's finding that Bustamante had previously been convicted for a drug abuse offense.

{¶3} Subsequently, on September 12, 2011, Bustamante's residence—which he shared with his mother—was searched pursuant to a warrant. At the residence, police seized what was later determined to be heroin and boldenone undecylenate,[2] a Schedule III controlled substance. The police also seized cash in the amount of $1,415.00, various electronics, and Bustamante's two vehicles.

{¶4} On October 20, 2011, Bustamante was indicted by the Seneca County Grand Jury for Trafficking in Heroin in violation of R.C. 2925.03(A)(1),(C)(6)(a), a felony of the fifth degree, Corrupting Another with Drugs in violation of R.C. 2925.02(A)(2),(C)(1), a felony of the second degree, Possession of Drugs (heroin) in violation of R.C. 2925.11(A),(C)(6)(a), a felony of the fifth degree, with the specification that property seized during the commission of the offense were proceeds derived from or acquired through the commission of the offense, and Possession of Drugs (boldenone undecylenate), in violation of R.C. 2925.11(A),(C)(2)(a), a felony of the fifth degree as a result of Bustamante being previously convicted of a drug abuse offense. (Doc. 2).

{¶5} On November 4, 2011, Bustamante pled not guilty to the charges against him. (Doc. 12).

---

[2] Revised Code 3719.41(E)(1)(a) lists boldenone as a Schedule III controlled Substance under the heading of Anabolic Steroids. Unlike the heroin, which was found in Bustamante's room in the residence, the boldenone was found in the grass outside the home, but still on the property.

{¶6} On April 25, 2012, Bustamante waived his right to a jury trial and elected to have a trial by the court. (Doc. 55).

{¶7} On April 25-26, 2012, the court held a bench trial. At the trial, thirteen witnesses were called including the officers conducting the controlled drug buy, the confidential informant involved in the controlled drug buy, the officers involved in the search of Bustamante's residence and property, and the individuals involved in testing the substances sent to the BCI crime lab for chemical analysis.

{¶8} On May 2, 2012, the court found Bustamante not guilty of the most serious offense, "Corrupting Another with Drugs." (Doc. 58). However, the court found Bustamante guilty of Trafficking in Heroin, and both counts of Possession of Drugs as charged in the indictment.[3] (Id.) With regard to the Possession of Heroin charge, the court made the additional finding that the property specified in the indictment was subject to forfeiture as instrumentalities and/or proceeds from illegal activity. (Id.)

{¶9} On June 7, 2012, Bustamante was sentenced to serve 11 months in prison on his conviction for Trafficking in Drugs, and 11 months in prison on each Possession of Drugs conviction. (Doc. 61). The sentences for Possession of

---

[3] With regard to Bustamante's conviction for possession of boldenone, the court made the additional finding that Bustamante had previously been convicted of a drug abuse offense to elevate the charge to a felony of the fifth degree.

-4-

Drugs were to be served concurrent to each other, but consecutive to the sentence for Trafficking in Drugs, for an aggregate prison term of 22 months. (*Id*.) As there was a discussion regarding the items to be forfeited, the court set a forfeiture hearing for a later date. (*Id*.) Bustamante appeals from this judgment entry of sentence. (*Id*.)

{¶10} On November 21, 2012, the court held a hearing on forfeiture of property that was seized and subject to forfeiture. On January 3, 2013, the court filed an entry listing the items to be distributed to those who had a valid claim, and detailing those items that were to be forfeited by Bustamante as either instrumentalities or proceeds of a crime. (Doc. 110).

{¶11} On February 15, 2013, the trial court filed a *nunc pro tunc* judgment entry correcting an address on the forfeiture entry. (Doc. 111). Bustamante also appeals from this forfeiture entry.

{¶12} It is from the June 7, 2012, judgment entry of sentence, and the February 15, 2013, judgment entry regarding forfeiture that Bustamante appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ERRED WHEN IT ORDERED THE APPELLANT TO PAY RESTITUTION TO A NON-VICTIM.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT COMMITTED A REVERSIBLE ERROR BY DEPRIVING THE APPELLANT OF HIS CONSTITUTIONAL RIGHTS.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT HAD INSUFFICIENT EVIDENCE TO CONVICT THE APPELLANT OF THE CRIME OF POSSESSION OF DRUGS.**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT'S DECISION TO SEIZE THE APPELLANT'S PROPERTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶13} For the sake of clarity, we elect to address the assignments of error out of the order in which they were raised.

*Second Assignment of Error*

{¶14} In Bustamante's second assignment of error, Bustamante argues that he was deprived of his constitutional rights. Specifically, Bustamante contends that the State failed to disclose that the confidential informant involved in the controlled drug buy was "fired" for using drugs in a different controlled drug buy shortly after Bustamante sold the informant heroin. In addition, Bustamante argues that his counsel was ineffective for failing to object when this information was presented and for failing to move for a mistrial.

{¶15} At the outset, we would note that no objection was raised at the trial regarding this issue, therefore, Bustamante has waived all but plain error. In order

-6-

to have plain error under Crim.R. 52(B) there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." *State v. Barnes,* 94 Ohio St.3d 21, 27, (2002). Plain error is to be used "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.* quoting *State v. Long,* 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶16} On appeal, Bustamante claims that the State failed to disclose that the confidential informant in this case was "fired" as an informant after he purportedly used drugs during a subsequent investigation involving a different individual. According to Bustamante, the State thus failed to disclose potential exculpatory evidence.

{¶17} To begin our analysis, we would note that there is no indication from the transcript that the State ever failed to disclose the fact that the confidential informant was subsequently "fired." When this information was first presented at trial through the cross-examination testimony of Detective Charles Boyer, no objection was made that the information was not disclosed, and defense counsel cross-examined Detective Boyer with this information. (Tr. at 96). There is no indication in the record that trial counsel was surprised by this information, or that the State ever failed to disclose this information.

{¶18} However, even assuming the State failed to disclose this information, Bustamante's counsel was still able to fully cross-examine both Detective Boyer and the confidential informant regarding the informant being "fired" for his use of drugs during the controlled buy operations. Therefore, Bustamante can show no resulting prejudice.

{¶19} Furthermore, Bustamante strangely argues on appeal that the information of the informant's "firing" was most relevant as exculpatory evidence to the charge of "Corrupting Another with Drugs." However, Bustamante was acquitted of that charge and thus no error could further assist him regarding that acquittal. As Bustamante's claim of the State's purported failure to disclose the confidential informant's subsequent drug use might relate to Bustamante's convictions for possession of heroin, possession of boldenone undecylenate, and for trafficking in heroin, we find that the confidential informant's subsequent termination would have no bearing on the outcome of those charges and no relevance to Bustamante's guilt.

{¶20} Thus for all of the foregoing reasons we cannot find any error, let alone plain error. As we have found no error, we cannot find that Bustamante's counsel was ineffective for failing to object or move for a mistrial. Accordingly, Bustamante's second assignment of error is overruled.

*Third Assignment of Error*

**{¶21}** In Bustamante's third assignment of error, Bustamante contends that there was insufficient evidence to convict him of Possession of boldenone undecylenate. Specifically, Bustamante argues that the State failed to present any evidence that Bustamante had either actual or constructive possession of a vial that contained a syringe and boldenone undecylenate[4] that was seized from Bustamante's yard.

**{¶22}** At the outset, we note that Bustamante failed to move for a Crim.R. 29(A) judgment of acquittal. Failing to move for a judgment of acquittal pursuant to Crim.R. 29(A), Bustamante waived all but plain error regarding the sufficiency of the evidence. *See* Crim.R. 29(A); *State v. Cooper*, 3d Dist. No. 9-06-49, 2007-Ohio-4937, ¶ 23, citing *State v. Roe*, 41 Ohio St.3d 18, 25 (1989).

**{¶23}** Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *State v. Smith,* 80 Ohio St.3d 89, 113 (1997).

---

[4] The Boldenone Undecyclenate was "a liquid inside a glass vial, which weighed 9.1 grams." (Tr. at 118).

**{¶24}** Possession of Drugs, specifically possession of schedule III controlled substances (which includes boldenone undecylenate), is criminalized pursuant to R.C. 2925.11(A),(C)(2)(a), which reads,

> **(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.**
>
> **\* \* \***
>
> **(C)  Whoever violates division (A) of this section is guilty of one of the following:**
>
> **\* \* \***
>
> **(2)  If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule III, IV, or V, whoever violates division (A) of this section is guilty of possession of drugs. The penalty for the offense shall be determined as follows:**
>
> **(a)   Except as otherwise provided in division (C)(2)(b), (c), or (d) of this section, possession of drugs is a misdemeanor of the first degree or, if the offender previously has been convicted of a drug abuse offense, a felony of the fifth degree.**

**{¶25}** Possession of drugs can be either actual or constructive. *Cooper*, *supra*, at ¶ 25. *See also State v. Wolery*, 46 Ohio St.2d 316, 329 (1976), certiorari denied, 429 U.S. 932, 97 S.Ct. 339; *State v. Haynes*, 25 Ohio St.2d 264 (1971). "A person has 'actual possession' of an item if the item is within his immediate physical possession." *State v. Williams,* 4th Dist. No. 03CA2736, 2004-Ohio-1130, ¶ 23 citing *State v. Fugate*, 4th Dist. No. 97CA2546 (Oct. 2, 1998). A

person has "constructive possession" if he is able to exercise domination and control over an item, even if the individual does not have immediate physical possession of it. *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus; *Wolery, supra*. For constructive possession to exist, "[i]t must also be shown that the person was conscious of the presence of the object." *Hankerson,* 70 Ohio St.2d at 91. Finally, the State may prove the existence of the various elements of constructive possession of contraband by circumstantial evidence alone. *State v. Stewart*, 3d Dist. No. 13-08-18, 2009-Ohio-3411, ¶ 51; *State v. Jenks,* 61 Ohio St.3d 259, 272-73 (1991), superseded by constitutional amendment on other grounds as stated in *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355.

{¶26} In this case, the State introduced evidence that Bustamante shared a residence with his mother. Bustamante's residence and the premises were searched pursuant to a search warrant subsequent to the controlled drug buy operation wherein Bustamante sold a confidential informant heroin. During the search of Bustamante's residence and the premises, officers located "a vial of suspected steroids outside [the residence] in the grass area next to the shed * * * along with a small vial containing a * * * needle or syringe."

{¶27} Inside the residence, the police found what was later determined to be heroin, and they also "located a syringe the same size, same make, same everything * * * in [Bustamante's] bedroom" as the syringe in the yard. (Tr. at

-11-

59). According to the police, "the two needles were the same but one was found with the suspected steroids outside in the grass area with the vial of * * * suspected steroids and the – the syringe. And then [the police] found another syringe or needle in the same * * * size, shape, make in the bedroom with Tyler Bustamante." (Tr. at 59).

{¶28} Thus police located the vial on the property where Bustamante resided, where he was able to exercise dominion and control over it. A needle was found with the vial of steroids that was identical to the type of needle located in Bustamante's room, enabling the trier of fact to infer a connection. In addition to this evidence, Bustamante sold heroin during the controlled drug buy to the confidential informant and had the informant use the heroin outside the residence in a car parked in the driveway. Therefore the factfinder could infer that Bustamante was in the habit of possessing, selling, or using drugs in the yard where he resided.[5]

{¶29} Based on the facts of this case we cannot find that there is an "obvious defect" in the trial court's finding or that a "manifest miscarriage of justice" existed giving rise to plain error. Accordingly, we cannot find that

---

[5] The State also contends that because Bustamante was at the gym at one point on the day of the controlled buy that the factfinder could infer that Bustamante was using the steroids. However, there is no indication that Bustamante used the steroids and mere use of a gym would not entitle the State to such an inference.

insufficient evidence existed to convict Bustamante of Possession of Drugs. Therefore, Bustamante's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶30} In Bustamante's fourth assignment of error, he argues that the trial court's decision to order that certain property of his be forfeited was against the manifest weight of the evidence. Specifically, Bustamante disputes the trial court's order regarding the following items: digital camera, Samsung cell phones, flip video camera, numerous gift cards, visa debit card, Bustamante's identification card, Dell Inspiron laptop computer, Panasonic flat-screen television, HP Notebook computer, silver LG Verizon phone, numerous cell phone chargers, numerous GPS units, rims with tires, $1,415.00 in cash, and the 1972 Chevrolet Chevelle SS.

{¶31} Revised Code Chapter 2981 permits "'[a] law enforcement officer [to] seize property that the officer has probable cause to believe is property subject to forfeiture.'" *State v. North*, 1st Dist. No. C-120248, 2012-Ohio-5200 ¶ 7 quoting R.C. 2981.03(A)(2). "Property subject to forfeiture" is defined to include "[p]roceeds derived from or acquired through the commission of an offense." R.C. 2981.02(A)(2). In *Dayton Police Dept. v. Byrd,* 2d Dist. No. 23551, 2010–Ohio–4529 ¶ 10, the court explained as follows:

> **Generally, the term "proceeds" refers to the profit gained directly or indirectly from an offense. R.C. 2981.01(B)(11). The burden is on the state to show that the money has any connection to the underlying criminal offense.** *State v. Ali* **(1997), 119 Ohio App.3d 766, 770, 696 N.E.2d 285. The state "must demonstrate that it is more probable than not, from all the circumstances, that the defendant used [the money] in the commission of criminal offenses." (Citations omitted.)** *Id***. at 769. The same logic applies regarding sufficient proof that the money was proceeds of the criminal offense.** *Id***. at ¶ 10.**

{¶32} A prosecuting attorney may pursue forfeiture of seized property in a criminal proceeding under R.C. 2981.04, a civil proceeding under R.C. 2981.05, or both. R.C. 2981.03(F). Criminal forfeiture is initiated by including in the charging instrument a specification consistent with R.C. 2941.1417 or by providing the defendant with "prompt notice," in conformity with Crim.R. 7(E), that the property is subject to forfeiture. R.C. 2981.04(A)(1) and (A)(2). In such actions, the State bears the burden of proof to show by a preponderance of the evidence that the seized property is subject to forfeiture under R.C. 2981.02. *See* R.C. 2981.04; *See also State v. Brownridge,* 3d Dist. No. 9–09–24, 2010–Ohio–104, ¶ 21.

{¶33} Generally, forfeiture is not favored in Ohio. *State v. Clark,* 173 Ohio App.3d 719, 2007–Ohio–6235, ¶ 8 (3d Dist.); *Marmet Drug Task Force v. Paz,* 3d Dist. No. 9-11-60, 2012-Ohio-4882. "Whenever possible, [forfeiture] statutes must be construed so as to avoid a forfeiture of property." *State v. Lilliock,* 70

Ohio St.2d 23, 26 (1982). Moreover, forfeiture is only appropriate when "the expression of the law is clear and the intent of the legislature manifest." *Id.*

**{¶34}** We do not disturb a trial court's findings in forfeiture cases if there is "'some competent, credible evidence going to all the essential elements of the case.'" *State v. Watkins,* 7th Dist. No. 07 JE 54, 2008–Ohio–6634, ¶ 34, quoting, *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279 (1978), syllabus. When employing this standard of review, a court has an obligation to presume the findings of the trier of fact are correct. *Seasons Coal Co. v. City of Cleveland,* 10 Ohio St.3d 77, 79–80 (1984). Mere disagreement over the credibility of witnesses or evidence is not sufficient reason to reverse a judgment. *Id.* at 80.

**{¶35}** In the trial court's verdict, the trial court found Bustamante guilty of Possession of Heroin, and made the additional finding that:

> **the property specified in the search warrant inventory, all owned and in the possession of the defendant, Tyler J. Bustamante, during the commission of the offense and used for purposes of facilitating the offense and/or are proceeds derived from or acquired through the commission of an offense \* \* \* shall be subject to forfeiture.**

(Doc. 58).[6] The court then set the matter of the forfeiture of Bustamante's property for a hearing.

---

[6] The finding of guilt specifically listed the property that was subject to forfeiture.

**{¶36}** On November 21, 2012, the court held a Forfeiture Hearing pursuant to R.C. 2981.04. At that hearing, the State informed the court that it had been notified by two parties claiming some of the seized property. The court also heard the testimony of Chelsea Dunn, who testified that some of the seized items were hers. After hearing the arguments of the parties and Dunn's testimony, the court ordered that the following items were to be forfeited:

> **(1) Silver digital scale; numerous packages of black tar heroin; (1) digital camera; (1) vial of steroids; numerous balloons and papers with residue; numerous Samsung cell phones; (1) Flip video camera; numerous Gift Cards; (1) Visa Debit Card; (1) Tyler J. Bustamante Ohio ID card; (1) Dell Inspiron laptop computer; (1) Panasonic flat-screen t.v.; (1) HP Notebook computer; (1) silver LG Verizon phone; numerous cell phone chargers; numerous GPS units; (4) rims with tires; and one thousand four hundred fifteen dollars ($1,415.00) U.S. currency seized in the above-captioned case is FORFEITED * * *.**

> **It is further ORDERED, ADJUDGED AND DECREED that the 1972 Chevrolet Chevelle SS motor vehicle * * * and 2002 Cadillac Deville motor vehicle * * * seized in the above-captioned case are FORFEITED.**

(Doc. 111).[7]

**{¶37}** On appeal, Bustamante challenges the forfeiture of all but the 2002 Cadillac Deville, the digital scale, and the drugs and paraphernalia. Bustamante argues that the remaining items were not instrumentalities used in a crime, and that the State did not show that the forfeited items were purchased through proceeds of

---

[7] Specific items claimed by the Tiffin Motel, and Lindsey Whitehead were returned and not forfeited.

a crime by a preponderance of the evidence. Bustamante contends that the State only showed evidence of one drug trafficking transaction, not ongoing conduct. Conversely, the State contends that all of the forfeited items Bustamante is complaining about were purchased with money Bustamante obtained through drug trafficking and that therefore as proceeds of a crime, the items were subject to forfeiture.

{¶38} As proof to satisfy its burden that the forfeited items were "proceeds" of a crime, the State introduced a certified letter from the Ohio Department of Taxation stating that as of October 19, 2011, Bustamante had not filed any tax returns for the years of 2000 through 2010, showing that Bustamante had no reported income.[8] (Tr. at 64); (State's Ex. 28). In addition, the State introduced evidence that Bustamante had otherwise been involved in selling drugs on and off for over a decade,[9] and that the police were aware Bustamante lacked gainful employment. (State's Ex. 6); (Tr. at 169). Detective Sergeant Donald Joseph testified that these were the reasons that Bustamante's vehicles were seized,

---

[8] In *State v. Dodson*, 12th Dist. No. CA2010-08-191, 2011-Ohio-6222, the Twelfth District Court of Appeals determined that a lack of an income through tax records, when combined with statements of the defendant that he made $10,000 to $15,000 per month were sufficient to show that cash subject to forfeiture "was proceeds derived from or acquired through the commission of trafficking in marijuana." *Dodson*, at ¶ 60.

[9] State's Exhibit 6 contained Detective Charles Boyer's affidavit used in obtaining the warrant to search Bustamante's residence. In that exhibit, Detective Boyer averred that Bustamante had been involved in drug activity dating back to 1998, when Bustamante was still a Juvenile. Detective Boyer averred that over the following thirteen years Bustamante had been involved in numerous investigations and charged numerous times with drug related crimes. In the affidavit, Detective Boyer provides summaries of those incidents and investigations.

because he believed they were paid for by drug proceeds. (Tr. at 169). The State thus contends that Bustamante had no income based on the tax records, and therefore he could not have afforded the forfeited items if not for his continuing history of selling drugs.

{¶39} In countering the State's evidence, Bustamante contends that the tax records were insufficient. Bustamante also argues that he was a student at Tiffin University and had received loan "checks" from the university; however, there is no testimony regarding this issue in the record. The only statements made regarding the alleged checks were made by Bustamante's counsel, rather than elicited as testimony at trial or at the forfeiture hearing.

{¶40} Notably Bustamante cites no case law in support of his argument that the State failed to meet its relatively low burden of preponderance of the evidence. While the tax records alone may only have indicated that Bustamante did not make enough money to file taxes, the State also introduced some competent credible evidence that Bustamante had been involved in a continuous course of drug conduct for over a decade. Bustamante produced no contrary evidence whatsoever to contradict the State's assertion that Bustamante purchased the valuable items through proceeds of a crime. Thus unlike in *State v. Conway*, 8th Dist. No. 96905, 2012-Ohio-590, wherein the Eighth District Court of Appeals found forfeiture improper where there was *some* other indication that the

defendant had made money in the preceding years, here there is absolutely *no* evidence that Bustamante had earned any money otherwise.[10]

**{¶41}** Thus evidence of Bustamante being involved in drug trafficking on and off for over a decade, when combined with the tax records showing that Bustamante had no reported income, provides *some* competent credible evidence that supports the trial court's finding that it was more likely than not that the forfeited items were purchased with drug proceeds.

**{¶42}** However, one item does not fall into the same category as the others. Specifically, Bustamante' ID card is not an instrumentality used in the offense and it is not an item necessarily purchased with drug proceeds. Moreover, there is no showing that unlike the other forfeited items of obvious value, Bustamante could not have acquired the ID card without expending drug proceeds. Therefore, we vacate the forfeiture of Bustamante's ID card.

**{¶43}** Accordingly, we sustain Bustamante's assignment of error only to the extent that we vacate the forfeiture of his ID card; however, Bustamante's fourth assignment of error is overruled in all other respects.

---

[10] Bustamante also claims that he worked as a confidential informant, but the record seems to establish that rather than working for money as the confidential informant in this case did, Bustamante was working as a confidential informant to "work off" drug trafficking charges.

*First Assignment of Error*

**{¶44}** In Bustamante's first assignment of error, Bustamante contends that the trial court erred by ordering Bustamante to pay restitution to the Seneca County Drug Task Force METRICH Enforcement Unit. Specifically, Bustamante argues that the trial court erred by ordering him to pay back the $423 that METRICH used to purchase a Lowe's gift card that was exchanged for heroin from Bustamante.

**{¶45}** This Court has held that the plain language of R.C. 2929.18(A)(1) makes restitution available only to actual victims of an offense. *State v. Taylor*, 3d Dist. No. 13-10-49, 2011-Ohio-5080, ¶ 57, citing *State v. Stewart,* 3d Dist. No. 16–08–11, 2008–Ohio–5823, ¶ 9, citing *State v. Toler,* 174 Ohio App.3d 335, 338, 2007–Ohio–6967. "A victim of a crime is defined as the person or entity that was the 'object' of the crime." *State v. Samuels,* 4th Dist. No. 03CA8, 2003-Ohio-6106, ¶ 5, citing Black's Law Dictionary (5th Ed.1979) 1405. In certain circumstances, a government entity may be considered a victim of a crime under R.C. 2929.18(A)(1), for example, when government funds are embezzled or when government property is vandalized. *Id.* However, a government entity voluntarily advancing its own funds to pursue a drug buy through an informant is not one of the scenarios contemplated by R.C. 2929.18(A)(1). *Taylor*, at ¶ 57, citing *State v. Pietrangelo,* 11th Dist. No.2003–L–125, 2005–Ohio–1686, ¶ 12–15; *State v.*

*Justice,* 5th Dist. No. 09–CA–66, 2010–Ohio–4781, ¶ 24; *State v. Jones,* 7th Dist. Nos. 08 JE 20, 08 JE 29, 2010–Ohio–2704, ¶ 44; *State v. Collins,* 6th Dist. Nos. H–09–001, H–09–005, 2009–Ohio–6346, ¶ 52, *State v. Frazier* (Mar. 9, 2011), 4th Dist. No. 10CA15.

**{¶46}** Seneca County Drug Task Force METRICH Enforcement Unit in the amount of $423 for the purchase of the Lowe's gift card. The State concedes that the trial court's order is error, and under our own case law, we find that this is, in fact, error. In light of this error, we hereby remand the matter with instructions for the trial court to vacate the order of restitution. Accordingly, Bustamante's first assignment of error is sustained.

**{¶47}** For the foregoing reasons the judgment of the Seneca County Common Pleas Court is affirmed in part, vacated in part, and reversed in part and the matter is remanded to the trial court for further proceedings consistent with our disposition of the first assignment of error.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**