[Cite as *State v. McLellan*, 2026-Ohio-402.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

MARCUS R. E. MCLELLAN,

    DEFENDANT-APPELLANT.

CASE NO. 1-24-61

OPINION AND
JUDGMENT ENTRY

Appeal from Allen County Common Pleas Court
Trial Court No. CR2024 0071

**Judgment Affirmed**

**Date of Decision: February 9, 2026**

**APPEARANCES:**

    *Chima R. Ekeh* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**MILLER, J.**

{¶1} Defendant-appellant, Marcus R. McLellan ("McLellan"), appeals the September 27, 2024 judgment entry of sentence of the Allen County Court of Commons Pleas. For the reasons that follow, we affirm.

*Factual Background*

{¶2} On March 14, 2024, the Allen County Grand Jury indicted McLellan on three counts: Count One of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(c), a second-degree felony; Count Two of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(c), a third-degree felony; and Count Three of possession of heroin in violation of R.C. 2925.11(A), (C)(6)(b), a fourth-degree felony. On April 17, 2024, McLellan entered a written plea of not guilty.

{¶3} A jury trial was held on August 19-20, 2024. At the trial, Patrolman Garrett Weekly ("Patrolman Weekly"), an officer with the Lima Police Department, testified that on July 20, 2023, he was off-duty running errands when he observed two individuals in a vehicle in the parking lot of a local business "nodding off" and, from his law-enforcement experience, appearing to be under the influence of drugs. Due to his concern that the driver of the vehicle was impaired, Patrolman Weekly contacted the Lima Police Department dispatch and relayed his concerns. As uniformed officers were en route, Patrolman Weekly observed the vehicle drive out of the parking lot onto a main thoroughfare and pull into the parking lot of a nearby

gas station. Patrolman Weekly followed the vehicle and maintained visual contact of the vehicle until uniformed officers arrived on the scene.

{¶4} Patrolman Logan Patton ("Patrolman Patton") arrived at the scene, followed several minutes later by Patrolman Jacob Mortimer ("Patrolman Mortimer"). Patrolman Patton testified that he approached the vehicle and made contact with the driver, whom he identified as McLellan. Patrolman Patton recalled approaching the vehicle, which had its front driver-side window down, and observed a tray on McLellan's lap with a rock-like substance, which Patrolman Patton suspected of being methamphetamine. According to Patrolman Patton, McLellan and the vehicle's passenger, Trevor King ("King"), were both unable to remain still and appeared unable to control their movements, making it clear to Patrolman Patton that the vehicle occupants were under the influence of narcotics.

{¶5} Patrolman Patton removed McLellan from the car and observed a black bag on the floorboard by his feet. Patrolman Patton then searched McLellan's person and located a clear plastic baggie containing a white-powdery substance that Patrolman Patton suspected of being cocaine or fentanyl.

{¶6} Patrolman Mortimer removed King from the vehicle. King gave Patrolman Mortimer consent to search his pockets, and Patrolman Mortimer located a bindle—a small, folded piece of paper containing a small amount of narcotics, inside a pack of cigarettes.

{¶7} Then, Patrolman Patton utilized his canine partner, Roscoe, to conduct a canine sniff for the presence of narcotics inside the vehicle. Roscoe immediately indicated for the presence of narcotics on the driver-side door, where a black Adidas bag was located.

{¶8} Inside the black Adidas bag, officers located a baggie with a white rock and 21 baggies containing a white substance. Officers suspected the large white rock of being crack cocaine and suspected the 21 smaller bags contained methamphetamine. Heroin was also located in the black Adidas bag.

{¶9} Patrolman Mortimer confirmed that the large bag of narcotics was found inside a black Adidas bag located on the driver-side floorboard where McLellan had been seated. Patrolman Mortimer denied that any narcotics were recovered from the passenger-side of the vehicle. Patrolman Patton's and Patrolman Mortimer's body-worn camera footage were played for the jury, and the video was consistent with the officers' testimony.

{¶10} Investigator Aaron Montgomery ("Investigator Montgomery") with the Lima Police Department interviewed McLellan several days after his arrest on the instant charges, and a recording of that interview was played for the jury. In the interview, when Investigator Montgomery asked McLellan if the drugs were his, McLellan gave a subtle nod, which Investigator Montgomery perceived to be McLellan confirming possession of the drugs. Then, Investigator Montgomery and

McLellan discussed where McLellan can get methamphetamine and fentanyl and the amounts that he is able to procure.

{¶11} The State rested, and then the defense rested without calling witnesses or introducing evidence.

{¶12} After deliberation, the jury found McLellan guilty of all counts. The trial court accepted the jury's verdict and found McLellan guilty thereof. The matter was continued for sentencing.

{¶13} On September 26, 2024, the trial court sentenced McLellan to an indefinite prison term of 4 years to 6 years on Count One, 24 months in prison on Count Two, and 12 months in prison on Count Three. The court ordered the sentences for Counts One and Two be served consecutively for an aggregate term of six to eight years in prison.

{¶14} McLellan filed a timely appeal and raises three assignments of error for our review. For ease of discussion, we elect to address McLellan's second and third assignments of error together.

### First Assignment of Error

**Appellant was denied his right to a speedy trial.**

{¶15} In his first assignment of error, McLellan argues that his speedy trial rights were violated. Specifically, he argues that the trial court should have dismissed his case on the basis that he was not brought to trial within the statutory timeframe. For the reasons that follow, we disagree.

*Standard of Review*

**{¶16}** "[S]peedy trial issues present mixed questions of law and fact." *State v. Marr*, 2018-Ohio-5061, ¶ 15 (3d Dist.). "[W]e apply a de novo standard of review to the legal issues but give deference to any factual findings made by the trial court." *Id.*

*Applicable Law*

**{¶17}** "'An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Ohio Constitution, Article I, Section 10.'" *State v. Irish*, 2019-Ohio-2765, ¶ 11 (3d Dist.), quoting *State v. Dahms*, 2017-Ohio-4221, ¶ 102 (3d Dist.). "'The proper standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72.'" *Dahms* at ¶ 102, quoting *State v. Ferguson*, 2016-Ohio-8537, ¶ 12 (10th Dist.).

**{¶18}** "R.C. 2945.71 provides the timeframe for a defendant's right to a speedy trial based on the level of the offense." *State v. Matland*, 2010-Ohio-6585, ¶ 19 (7th Dist.). R.C. 2945.71 provides that "[a] person against whom a charge of felony is pending . . . [s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). "This 270-day period may be extended for one or more of the reasons listed in R.C. 2945.72(A)-(I)." *Irish* at ¶ 12. Absent any such extension, failure to bring a defendant to trial within the 270-

day period subjects the case to dismissal upon motion of the defendant. *Id.*, citing R.C. 2945.73(B). "The date of the arrest is not included for the purpose of calculating time under the statutes for a speedy trial." *State v. Taylor*, 2014-Ohio-1793, ¶ 27 (3d Dist.). "However, each day the defendant spends in jail solely on the pending criminal charge counts as three days." *Matland* at ¶ 19, citing R.C. 2945.71(E).

*Analysis*

**{¶19}** After reviewing the record, we do not find the trial court erred by determining that McLellan's constitutional right to a speedy trial had not been violated.

**{¶20}** McLellan remained incarcerated from March 26, 2024, when he was indicted on the instant charges, to the time of his trial on August 19, 2024. During that time, several tolling events occurred, including McLellan filing a motion to suppress. Relevant to this appeal, on July 8, 2024, the trial court filed a scheduling order setting the matter for a jury trial on August 5, 2024. The following day, McLellan's trial counsel filed a motion for a continuance citing a previously-scheduled trip. That same day, the trial court granted the motion for a continuance. On July 18, 2024, an assignment notice was filed re-scheduling the jury trial for August 19, 2024, the next-available trial date.

**{¶21}** On August 20, 2024, during the second day of the jury trial and after the State rested its case, McLellan's counsel notified the court that McLellan had

concerns relating to his speedy-trial rights. Specifically, McLellan challenged the continuance filed by his attorney on July 8, 2024. McLellan argued that the motion for a continuance was filed without his consent and that he objected to the resulting continuance. After considering McLellan's argument, the trial court found that McLellan's speedy-trial rights were not violated[1]. The court determined that McLellan's counsel's motion for a continuance for her trip was reasonable and the two-week delay that resulted was also reasonable.

{¶22} The parties agree that the original trial date of August 5, 2024 was within the 270-day timeframe. However, McLellan contends that the two-week delay in bringing the matter to trial resulted in a violation of his speedy-trial rights. On appeal, McLellan argues that his speedy-trial rights were violated on the basis that he did not consent to his counsel filing the motion for a continuance. He reasons that without his consent to the delay, the trial court should not have granted the continuance and, accordingly, his speedy-trial rights were violated.

{¶23} Although McLellan argues that his constitutional right to a speedy trial was violated by his trial counsel seeking a continuance, "[u]nder R.C. 2945.72(H), speedy trial time does not accrue during '[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted

---

[1] When considering McLellan's concerns relating to his speedy-trial rights, the trial court and the parties carefully reviewed the record, counted the days that passed, and determined to which party the time was chargeable. *See* R.C. 2945.71; R.C. 2945.72. McLellan does not challenge these determinations on appeal, focusing instead on his counsel's request for a continuance.

other than upon the accused's own motion.'" *State v. Adams*, 2020-Ohio-6886, ¶ 8 (3d Dist.), quoting R.C. 2945.72(H). "'[I]t is well-established that a defendant is bound by the actions of counsel in waiving speedy trial rights by seeking or agreeing to a continuance, even over the defendant's objections.'" *Id.*, quoting *State v. Glass*, 2011-Ohio-6287, ¶ 17 (10th Dist.), citing *State v. McBreen*, 54 Ohio St.2d 315, syllabus (1978). Thus, McLellan was bound by his trial counsel's motion for a continuance, even if he objected.

Furthermore, R.C. 2945.73(C)(2) provides, in relevant part, that:

Upon motion made at or before the commencement of trial, but not sooner than fourteen days before the day the person would become eligible for release pursuant to division (C)(1) of this section, the charges shall be dismissed with prejudice unless the person is brought to trial on those charges within fourteen days after the motion is filed and served on the prosecuting attorney. If no motion is filed, the charges shall be dismissed with prejudice unless the person is brought to trial on those charges within fourteen days after it is determined by the court that the time for trial required by sections 2945.71 and 2945.72 of the Revised Code has expired.

{¶24} McLellan's concerns were raised after the State rested its case on the second day of the jury trial. Moreover, even if the trial court had determined that the speedy-trial clock had expired, McLellan was brought to trial within the 14-day grace period permitted under R.C. 2945.73(C)(2). *See State v. Knott*, 2024-Ohio-2289, ¶ 49 (2d Dist.) ("Only if the defendant's case is not tried within that 14-day grace period [outlined in R.C. 2945.73(C)(2)] are the defendant's criminal charges

to be dismissed with prejudice."); *State v. Johnson*, 2025-Ohio-1009, ¶ 22-23 (3d Dist.).

**{¶25}** Accordingly, McLellan's first assignment of error is overruled.

**Second Assignment of Error**

**Appellant's convictions were not supported by sufficient evidence.**

**Third Assignment of Error**

**Appellant's convictions were against the manifest weight of the evidence.**

**{¶26}** In his second assignment of error, McLellan contends that his convictions were not supported by sufficient evidence. In his third assignment of error, McLellan challenges the weight of the evidence supporting his convictions.

*Standards of Review*

**{¶27}** Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Accordingly, we address the sufficiency of the evidence and manifest weight legal concepts individually.

**{¶28}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional*

*amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

{¶29} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*McLellan's Offenses*

**{¶30}** McLellan was convicted of three drug-possession charges in violation of R.C. 2925.11(A), which provides, "[n]o person shall knowingly obtain, posses, or use a controlled substance or a controlled substance analog."  "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."  R.C. 2925.01(K).

**{¶31}** "The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'"  *State v. Brooks*, 2012-Ohio-5235, ¶ 45 (3d Dist.), quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).  The Ohio Revised Code defines "knowingly" as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist.  When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

**{¶32}** "Possession of drugs can be either actual or constructive."  *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.).  "A person has 'actual possession' of an item if the item is within his immediate physical possession."  *State v. Williams*,

-12-

2004-Ohio-1130, ¶ 23 (4th Dist.). "A person has 'constructive possession' if he is able to exercise domination or control over an item, even if the individual does not have immediate physical possession of it." *Bustamante* at ¶ 25. "For constructive possession to exist, '[i]t must be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982).

{¶33} "[T]he State may prove the existence of the various elements of constructive possession of contraband by circumstantial evidence alone." *Id.* "Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *State v. Voll*, 2012-Ohio-3900, ¶ 19 (3d Dist.). "Inherent in a finding of constructive possession is that the defendant was conscious of the item and therefore had knowledge of it." *State v. Alexander*, 2009-Ohio-597, ¶ 24, citing *Hankerson* at syllabus and *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976).

{¶34} Count One relates to methamphetamine, Count Two relates to cocaine, and Count Three relates to heroin.

*Analysis: Sufficiency of Evidence*

{¶35} McLellan concedes that the 1.1 grams of methamphetamine on the tray in his lap and the bag of cocaine found in his pocket belonged to him. However, he contests that he possessed the drugs in the black Adidas bag, including the 21

baggies containing methamphetamine, the bag of cocaine and the bag of heroin. Rather, he attempts to argue that those drugs were actually found in King's pocket.

{¶36} The basis of McLellan's argument that the drugs were found in King's pocket, rather than in a black Adidas bag, hinges on the lack of photographs of the drugs where they were initially located and a statement from Patrolman Patton's report of the incident.

{¶37} In support of his argument, McLellan relies on Patrolman Patton's written  report of the incident that could be read to state that the drugs were found in King's pocket.  Specifically, the testimony at issue, which was part of McLellan's cross-examination of Patrolman Patton, is as follows:

[Defense Counsel]: As far as report writing, did you write a report in this case?

[Ptl. Patton]: Yes, ma'am.

[Defense Counsel]: Okay, and that was written, I guess, pretty soon after this happened, the same day?

[Ptl. Patton]: Probably almost directly after.

[Defense Counsel]: Okay.  Um, I guess in, what's the reason for writing those reports?

[Ptl. Patton]: To give us, to write down exactly what happened and so when we come to court we have a general idea of what happened, that way it gets sent to investigators and they can look over the case and everything.

[Defense Counsel]: Okay. So fair to say, I mean when you write that report obviously everything's fresh in your mind because it just happened?

[Ptl. Patton]: Yes.

[Defense Counsel]: Okay. Um, so as far as your report, um, isn't it true that you had, I guess, documented in your report that found in [King's] pocket was twenty one (21) small individually packaged baggies that were suspected meth?

[Ptl. Patton]: I do not know, I'd have to look over my report.

[Defense Counsel]: Okay. Um, I guess would looking over your report refresh your memory?

[Ptl. Patton]: Yes, because that's absolutely not where the baggies were found, so looking over my report would help, yes.

[Patrolman Patton reads report.]

[Ptl. Patton]: Yes, I lumped everything together in this whole paragraph.

[Defense Counsel]: Okay. Um, thank you. So I guess as far as when you say lumped everything together, um, everything that was found in your report you said was found on Trevor [King], who was the passenger?

[Ptl. Patton]: In the report it reads that way, yes, but through the, what happened out there, that's not what happened.

(Aug. 19-20, 2024 Tr. at 261-263).

{¶38} On redirect examination, the State clarified Patrolman Patton's testimony regarding his report.

-15-

| [State]: | Patrolman Patton kind of, uh, going off of what [defense counsel] said, um, she had asked you a question about a wording in your report. Uh, you then reviewed your report to, uh, kind of, I guess, see what it was. Um, was it like a big run-on sentence or . . . |
|---|---|
| [Ptl. Patton]: | It was a very long run-on sentence. |
| [State]: | Okay. Um, but again, we watched your bodycam and you had testified. Where did that approximately twenty-one (21) small individual baggies come from? |
| [Ptl. Patton]: | Through the video and everything on Patrolman Mortimer's body camera, he found that in the black bag that was located by, uh, the Defendant's feet. |
| [State]: | Not in, uh, Mr. King's pocket? |
| [Ptl. Patton]: | No. |

(Aug. 19-20, 2024 Tr. at 267-268).

**{¶39}** Although McLellan attempts to argue that Patrolman Patton's testimony indicates that the 21 baggies of methamphetamine were found in King's pocket rather than in the black Adidas bag, Patrolman Patton's testimony clearly indicates that despite the imprecise wording of his report[2], the methamphetamine was not found in King's pocket.

---

[2] Patrolman Patton's report was not marked as an exhibit or otherwise admitted into the record. Accordingly, it is not part of the record on appeal.

-16-

{¶40} Furthermore, an abundance of evidence indicates that the 21 baggies containing methamphetamine, the cocaine and the heroin were all located in the black Adidas bag. For instance, Patrolman Patton testified that he observed the black bag by McLellan's feet on the floorboard of the driver's seat, prior to removing McLellan from the vehicle. Furthermore, Patrolman Patton's body-worn camera footage depicts the black bag near McLellan's feet in the vehicle. Patrolman Patton's body-worn camera footage further depicts Roscoe indicate the presence of drugs in the driver side of the vehicle, where McLellan had been seated moments before.

{¶41} Patrolman Mortimer also testified that he removed the black Adidas bag from the vehicle, placed it in the passenger seat of Patrolman Patton's cruiser, and searched it. Inside, Patrolman Mortimer located the 21 baggies of methamphetamine, the large cocaine rock, and the heroin. Furthermore, Patrolman Mortimer testified that he searched King's person and only located the bindle with a small amount of narcotics in the cigarette pack he found in King's pocket. Patrolman Mortimer specifically denied that any additional narcotics were found on King. Patrolman Mortimer's body-worn camera footage is consistent with his testimony. Additionally, Investigator Montgomery testified that McLellan confirmed that the drugs at issue belonged to him.

{¶42} Accordingly, we find that, when considered in a light most favorable to the State, sufficient evidence was presented from which the jury could find McLellan guilty of the three possession of drug offenses.

{¶43} McLellan's second assignment of error is overruled.

*Analysis: Manifest Weight of the Evidence*

{¶44} Having found that sufficient evidence supports his possession of drugs convictions, we turn to McLellan's argument that his convictions are against the manifest weight of the evidence. However, in making his manifest weight argument, McLellan largely duplicates his claims made when challenging the sufficiency of the evidence. Specifically, he argues the photographs of the drugs do not depict where the drugs were found. Rather, the black Adidas bag was first removed from the driver-side floor in McLellan's vehicle prior to being searched. Accordingly, the photographs of the drugs were not taken where the drugs were originally found. McLellan reasons that the lack of photographs where the drugs were located, combined with the alleged inconsistencies in Patrolman Patton's statements, makes the jury's finding that the drugs belonged to McLellan against the manifest weight of the evidence.

{¶45} However, as outlined with respect to McLellan's arguments relating to the sufficiency of the evidence, a plethora of evidence supports the jury's finding that McLellan possessed the drugs. The apparent inconsistencies between Patrolman Patton's report and the other evidence can be explained by Patrolman

Patton's testimony that the report was not artfully worded. Furthermore, although the drugs were not specifically photographed "in place," Patrolman Patton and Patrolman Mortimer's body-worn camera footage depicts the black Adidas bag located on the driver-side floorboard. The body-camera footage also depicts Patrolman Mortimer searching the bag and King. The overwhelming bulk of the evidence indicates that the narcotics at issue were possessed by McLellan. Accordingly, the jury did not lose its way by finding McLellan guilty of the possession of drugs offenses.

{¶46} McLellan's third assignment of error is overruled.

*Conclusion*

{¶47} For the foregoing reasons, McLellan's assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Allen County Court of Common Pleas.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and WALDICK, J., concur.**

Case No. 1-24-61

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is  hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.


_____
Mark C. Miller, Judge


_____
William R. Zimmerman, Judge


_____
Juergen A. Waldick, Judge


DATED:
/jlm

-20-